J-A29006-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAHNEE JAHBRIL SMITH | : | |
| | : | |
| Appellant | : | No. 1239 WDA 2020 |

Appeal from the Judgment of Sentence Entered October 8, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008570-2019

BEFORE: BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED: JANUARY 25, 2022**

Appellant, Jahnee Jahbril Smith, appeals from the judgment of sentence of 3 to 6 months' incarceration, followed by 24 months' probation, imposed after he was convicted, following a non-jury trial, of possession of a controlled substance (35 P.S. § 780-113(a)(16)), possession of drug paraphernalia (35 P.S. § 780-113(a)(32)), and escape (18 Pa.C.S. § 5121(a)). Appellant solely challenges the sufficiency of the evidence to sustain his escape conviction. After careful review, we reverse Appellant's conviction for that offense, vacate his probationary sentence, and affirm his judgment of sentence in all other respects.

The trial court summarized the facts established at trial, as follows:

The evidence presented at trial established that between 6:00-7:00 am on June 19, 2019, City of Pittsburgh [P]olice[, including

_____

[*] Retired Senior Judge assigned to the Superior Court.

Officer Phillip Szalla,] were dispatched to 2524 Park Hill Drive after [Appellant's] father called 911 to report a domestic violence incident between [Appellant] and his girlfriend. The report was that the two had argued throughout the night into the morning, and that [Appellant] was in possession [of a] firearm. When officers arrived at the scene[, Appellant's] father was out in front of the residence and [Appellant] was at an unknown location speaking to 911 on his cell phone. The 911 [o]perator was able to ping [Appellant's] location and advise[d] officers where he was. The [o]fficers realized that [Appellant] was in the rear of the residence, proceeded to that location[,] and observed [Appellant] there. Officer Szalla could see [Appellant] and heard him speaking with the 911 operator. He told [Appellant] to stop and [Appellant] ignored the command and ran off while holding his waistband. [Appellant] ran through the area until he reached Amani Christian Academy[,] … where he eventually decided to lie down in the playground area. He was then taken into custody by police.

Trial Court Opinion (TCO), 5/27/21, at 3. After being taken into custody, Appellant was searched by officers, leading to their discovery of drugs and drug paraphernalia. *See* N.T. Trial, 10/8/20, at 37.

Based on this evidence, the court convicted Appellant of the above-stated offenses on October 8, 2020. That same day, the court sentenced Appellant to the term set forth, *supra*. He filed a timely post-sentence motion, which was denied. Appellant then filed a timely notice of appeal. On November 16, 2020, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. In the order, the court notified Appellant that his concise statement was due on December 7, 2020, and that "[a]ny extension of time for the filing and service of the statement … shall only be by an [o]rder entered pursuant to a motion for extension setting forth the specific grounds for the request for extension."

Order, 11/16/20 (single page). The court also informed Appellant that "[a]ny issue not properly included shall be deemed waived." *Id.*

On December 4, 2020, Appellant's counsel filed a motion for an extension of time within which to file Appellant's Rule 1925(b) statement. The court did not issue an order ruling on that motion. Nevertheless, counsel did not file Appellant's concise statement until February 17, 2021. On May 27, 2021, the court filed a Rule 1925(a) opinion, making no mention of the untimeliness of Appellant's Rule 1925(b) statement, and addressing the merits of his sufficiency issue. Based on these facts, we will address Appellant's claim. *See Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa. Super. 2009) (holding that where an appellant files an untimely Rule 1925(b) statement, "this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal").

Appellant states his single issue as follows: "Was the evidence insufficient to prove beyond a reasonable doubt that [Appellant] 'escaped' since there was no evidence he was in 'official detention' when Officer Szalla testified he was in official detention when they made 'visual contact?'" Appellant's Brief at 4.

To begin, we note our standard of review of a challenge to the sufficiency of the evidence:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light

most favorable to the verdict winner, are sufficient to support all elements of the offense. ***Commonwealth v. Moreno,*** 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. ***Commonwealth v. Hartzell****,* 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. ***Moreno, supra*** at 136.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011).

Here, Appellant challenges his conviction of escape, which is defined as

follows:

**(a) Escape.**--A person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period.

18 Pa.C.S. § 5121(a). Additionally, the statute states:

**(e) Definition.**--As used in this section the phrase "official detention" means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but the phrase does not include supervision of probation or parole, or constraint incidental to release on bail.

18 Pa.C.S. § 5121(e) (emphasis omitted).

Appellant argues that the Commonwealth failed to prove that he was in

'official detention' when he fled from police and, thus, his escape conviction

must be reversed. At the outset, Appellant explains:

This Court has previously determined that official detention, in the context of escape, means "a seizure in which the police have restrained the liberty of a person by show of authority or physical force." ***See Commonwealth v. Santana***, 959 A.2d 450, 452 (Pa. Super. 2008) (internal citations and quotations omitted). "Official detention" has also been interpreted to mean a seizure in which "the police have restrained the liberty of a person by show

of authority or physical force." ***Commonwealth v. Stewart***, 648 A.2d 797, 798 (Pa. Super. 1994). The determination of whether or not a seizure has occurred is based on the totality of the circumstances and "whether a reasonable person would have believed he or she was free to leave." ***Id***. "Not all interactions between the police and citizens involve seizure of persons. Only when the police have restrained the liberty of a person by show of authority or physical force may we conclude that a seizure has occurred." ***Commonwealth v. Jackson***, 630 A.2d 1231, 1236 (Pa. Super. 1993).

Appellant's Brief at 16-17.

Applying this definition of 'official detention' to the present facts, Appellant argues that the Commonwealth's evidence was insufficient. In support, he relies primarily on two cases, ***Stewart*** and ***Commonwealth v. Woody***, 974 A.2d 1163 (Pa. Super. 2009). Appellant explains:

In … ***Stewart***, … a police officer responded to a domestic disturbance call of a person with a possible weapon. [***Stewart***, 648 A.2d] at 797. The police officer pulled behind the defendant's vehicle, approached with his gun drawn, and ordered the defendant to place his hands on the dashboard. The defendant drove off and was apprehended approximately twenty minutes later. ***Id***. In upholding his conviction for escape, this Honorable Court reasoned that no "reasonable person would believe he or she is free to leave when a uniformed officer with a gun drawn has requested that person to turn the car off and to place his or her hands on the dashboard. We conclude, therefore, that [the o]fficer['s] … show of authority was sufficient to place Stewart in official detention." ***Id***. at 798.

In … ***Woody***, … this Court[] vacat[ed] the conviction for escape, … noting that in ***Stewart***[,] there was a "momentary period in which the officer was able to demonstrate a show of authority to the appellant" as to suggest to him that he was officially detained. [***Woody***,] 939 A.2d … at 362. In reversing the appellant's conviction for escape, the Superior Court in ***Woody*** stressed that, unlike in ***Stewart***, the charge of escape was based solely on [Woody's] failure to comply with instructions to stop and get on the ground. ***Id.*** at 363. This command, without an additional

- 5 -

show of authority or force, was insufficient to establish that [Woody] had been detained. *Id.*

Similarly, in the case *sub judice*, there was a lack of evidence establishing that [Appellant] had been detained. While several police officers responded to the 911 call, the Commonwealth cannot claim that this show of force resulted in [Appellant's] official detention, as it is uncontradicted that he left his father's residence before the police arrived. Shortly after arriving, Officer Szalla began searching for [Appellant] so he could "get his side of the story." While determining whether a seizure occurred is based upon the totality of circumstances and whether a reasonable person would have believed he was free to leave, since [Appellant] was not home when the police arrived, he would not have seen the number of police officers responding to his father's emergency call. Hence, he would be unaware that he was "not free to leave."

Additionally, without some other show of authority, the Commonwealth cannot establish that [Appellant] was officially detained. *See, e.g.*, *Commonwealth v. Colon*, 719 A.2d 1099, 1101 (Pa. Super. 1998) (noting that a warrant for arrest completes a required element of official detention); *see also Santana*, 959 A.2d at 453 (noting that the warrant to detain [the] appellant, officers['] ordering [the] appellant to stop running, and officers['] informing [the] appellant he was under arrest were sufficient to establish detention). Once Officer Szalla spotted a grey clothed figure some distance in front of him going into a tree line – he assumed it was [Appellant] - he began a foot pursuit. He yelled[,] "Jahnee[,]" and ordered him to "stop." Officer Szalla did not yell that [Appellant] was under arrest, nor did he yell that he had a warrant for his arrest. [Appellant] did not acquiesce to Officer[] Szalla's commands. As in *Woody*, a defendant who ignores a police officer's commands, cannot be in "official detention." Therefore, his conviction for escape should be vacated.

Appellant's Brief at 17-19 (citations to the record omitted).

Having carefully reviewed the record, and the case law cited by Appellant, we agree that his escape conviction must be reversed. Initially, in explaining why the evidence was sufficient to convict Appellant, the trial court merely states that, "[f]rom the time that officers located [Appellant] behind

the residence, until he was taken into custody[,] he was repeatedly told to stop after running from the scene of the investigatory detention." TCO at 3. However, the evidence demonstrates that Appellant was not detained at his father's home, as Officer Szalla testified that Appellant "had left the residence" before police responded to the 911 call. N.T. Trial at 23. Moreover, under *Woody*, Officer Szalla's yelling for Appellant to stop does not amount to an 'official detention' for purposes of escape. There, a police officer pursued Woody in a marked patrol car with its emergency lights on, yet Woody failed to stop his vehicle. *See Woody*, 939 A.2d at 361. Woody then abandoned his car and fled on foot, continuing to run even when the pursuing officer was "yelling for him to stop and … get on the ground." *Id.* (citation to the record omitted). In concluding that Woody's flight from police was not sufficient to prove the crime of escape, we explained:

> Our decision in *Stewart* was based on an evaluation of the specific circumstances therein. Based on the specific circumstances of the instant case, we cannot reach the same conclusion. As noted above, in *Stewart*, we found that the officer's actions, namely, his approach of the appellant's stopped vehicle, with his weapon drawn, and his instructions that the appellant turn off his car and place his hands on the dashboard, constituted an official detention of the appellant. In *Stewart*, there existed a momentary period in which the officer was able to demonstrate a show of authority to the appellant, namely, when the appellant's vehicle was stopped with the appellant inside, so as to suggest to the appellant that he was being officially detained.
>
> In the instant case, however, the charge of escape was based entirely on [Woody's] failure to comply with [the o]fficer['s] instructions to "stop and get on the ground[,]" … which were uttered by the officer from his vehicle when [Woody] exited his own vehicle to flee on foot. At no time was [Woody] actually

detained by the officer; indeed, the facts suggest exactly the opposite. Based on our conclusion that [Woody] was never officially detained, we hold that the evidence was insufficient to support [his] conviction for escape….

***Id.*** at 362-63 (citations to the record omitted).

Here, as in ***Woody***, Appellant was never actually detained by Officer Szalla, and his escape conviction is premised entirely on his failure to comply with Officer Szalla's commands to "stop." Unlike in ***Stewart***, Appellant was not standing still with Officer Szalla's holding him at gunpoint before he fled. Instead, the officer first saw Appellant across "an open field" behind his father's house, and then yelled for Appellant to stop as the foot chase ensued. ***See*** N.T. Trial at 28. There was no warrant for Appellant's arrest, and Officer Szalla never yelled that Appellant was under arrest. ***See Colon***, 719 A.2d at 1101 (concluding that, "[a]t the point [Colon] had been informed [that] the officers had a warrant for his arrest and that he was under arrest, [he] was detained by a show of authority whereby he could not reasonably believe he was free to leave").

Moreover, we reject the Commonwealth's position that Appellant was detained simply because he knew the police wanted him to stop so they could speak to him. ***See*** Commonwealth's Brief at 19. Clearly, the appellant in ***Woody*** knew that the police officer wanted him to stop when the officer activated his lights and sirens and then yelled for Woody to stop and get on the ground. Nevertheless, we held that no official detention had ***actually*** occurred.

We also reject Officer Szalla's testimony that Appellant was "detained" when the officer "first made visual contact" with Appellant. N.T. Trial at 34-35. Neither **Woody** nor **Stewart**, or any other case reviewed by this Court, supports the position that an official detention is effectuated upon an officer's mere sight of, or eye contact with, a suspect.

For all of these reasons, we agree with Appellant that the evidence was insufficient to prove that he was under 'official detention' when he fled from police. Thus, we reverse his conviction for escape, and vacate his probationary sentence for that offense. As our disposition does not upset the court's overall sentencing scheme, we affirm Appellant's judgment of sentence in all other respects.

Judgment of sentence vacated in part, affirmed in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/25/2022